YELVERTON, Judge.
This is an appeal by Louis Lognion and Rena Marie Lognion from a judgment rendered in their application for a permanent injunction of a sheriffs sale pursuant to executory proceedings brought by Gulf National Bank of Lake Charles. Although the trial court granted the Lognions partial relief, enjoining the sale of one piece of property and awarding them attorney’s fees, the appellants on this appeal complain that they were entitled to additional relief, and they rely on four assignments of error.
Before discussing these assignments individually, it is necessary to explain the factual background of the parties dispute, the procedural events, and the decision of the trial court. For this we quote the trial court’s excellent and concise reasons for judgment, as follows:
Gulf National Bank at Lake Charles filed a petition for executory process against Louis Lognion and his wife on three items of indebtedness. Lognion seeks to enjoin the sheriff’s sale. Trial was had on the application for a permanent injunction.
The alleged items of indebtedness are:
1) $194,195.47 represented by a hand note dated January 16, 1986. This hand note is secured by the pledge of three collateral mortgage notes, one dated May 27, 1983, in the sum of $150,000.00; one dated September 30, 1983, in the sum of $30,000.00; and one dated December 11, 1984, in the sum of $27,000.00, each made payable to bearer on demand.
2) $3,295.67 represented by a hand note dated January 16, 1986. This hand note is secured by the pledge of a collateral mortgage note dated August 12, 1975, in the sum of $45,000.00, made payable to bearer on demand.
3) $46,823.08. The adverse contentions concerning evidence of this indebtedness and security therefor will be discussed later.
INDEBTEDNESS OF $194,195.47
Lognion contends that he never intended to pledge the three collateral mortgage notes as security for the $194,-195.47 hand note. The security description on the back of the hand note was not typed until after Mr. and Mrs. Lognion had signed the note. Further, Mr. and Mrs. Lognion did not sign in the proper place below the security description, but instead, signed in the spaces below verbiage requesting the bank to pay the amounts owed by debiting their accounts. Based on this, it is argued that Lognion had no intention of furnishing security for this note, but instead, only intended to authorize the bank to withdraw the installment payments from his checking account.
The checking account referred to is the account into which property rental payments were made. The monthly rental payments were less than the monthly installment payments. Lognion testified that he intended to supplement these rental installments by depositing in the account monies that he earned selling used cars.
Lognion had been a long-time customer of the bank, and had made numerous loans. He suffered severe financial problems in 1985, and became very delinquent on his loans. At the bank’s suggestion, three loans were consolidated into the $194,195.47 note, with reduced payments. An agreement was made to do so after discussion between a bank official and Lognion. The collateral mortgage notes securing the outstanding loans were to be and were used as security for the new hand note.
To believe that the bank would give up its existing security and accept a new note consolidating the loans for $194,-195.47 without security, defies reason. Lognion knew that the security' which the bank held was to be used as security for the new note. The court is also satisfied Lognion and his wife signed the back of the note in the wrong spaces through error.
*646 These collateral mortgage notes had been in the continuous possession of the bank since the dates on which they were signed. Under Civil Code Article 3158, the bank was entitled to maintain these notes as security for the $194,195.47 note if the bank had acted in good faith. It is the court’s conclusion that the bank did act in good faith.
The bank is entitled to enforce payment of this indebtedness by executory process.
INDEBTEDNESS OF $3,295.67
Lognion’s petition for an injunction alleges that this note had prescribed, and on that basis, the sheriff's sale should be enjoined.
At the trial of the case, Lognion withdrew the defense of prescription. Accordingly, the bank is entitled to enforce this obligation by executory process.
INDEBTEDNESS OF $46,823.08
The bank contends that the continuing guarantee agreement with the supporting affidavit is the evidence of indebtedness required by the Code.
If the continuing guarantee could be considered evidence of the indebtedness, it is not in authentic form as required by CCP 2635. For that reason the bank is not entitled to use executory process. Additionally, it is not evidence of the indebtedness. IOt is simply the personal guarantee of Lognion for the payment of indebtedness of Louis Ray Chevrolet, Inc. to the bank up to the principal amount of $75,000.00. The evidence of the indebtedness would be the hand notes which were executed by Louis Ray Chevrolet, Inc., or perhaps, the judgment subsequently obtained by the bank on these notes.
Accordingly, the bank is permanently enjoined from continuing to proceed by executory process in this proceeding to enforce the alleged indebtedness of $46,-823.08. This judgment is without prejudice to the right of the bank to institute another proceeding for executory process if appropriate evidence of the indebtedness is filed therewith.
It is the conclusion of the court that the bank may continue with this proceeding to enforce by executory process the first two items of indebtedness, deleting from this proceeding the attempt to enforce payment of the alleged indebtedness of $46,823.08.
DAMAGES
Mr. and Mrs. Lognion claim damages for mortification, humiliation and mental anguish for the wrongful seizure of the properties. They have shown that only a portion of the property was wrongfully seized. Of eight items of property seized, only one was seized wrongfully. The court believes that the mental anguish suffered by plaintiffs would have been the same had only the rightfully seized seven parcels of property been seized instead of eight. They knew they were heavily indebted to the bank, and were expecting foreclosure proceedings. The claim for damages for mental anguish will be denied.
However, plaintiffs are entitled to attorney’s fees for services rendered in connection with enjoining the sale of the property wrongfully seized. The total expenses and attorney’s fees incurred by plaintiffs are $4,166.75. Of this, the court will allow one-third, or $1,388.91, as being the portion of the fees and expenses attributable to the successful portion of their injunctive action.
On this appeal the Lognions raise four issues. They frame the first issue as follows:
If a creditor has a debtor execute a promissory note and thereafter adds a security description to the reverse thereof without the knowledge of the debtor as to what has been added, is there a valid pledge of the security?
We accept and adopt the reasons given by the trial judge in response to the appellants’ arguments regarding this issue.
Additionally, we note that no formality other than delivery to the pledgee is required for a valid pledge, and where the *647 pledgee has at all times retained possession of the mortgage note, the pledge remains effective as of the date of the original pledge. La.C.C. art. 3158; Acadiana Bank v. Foreman, 352 So.2d 674 (La.1977).
The second issue is described by the appellants thusly:
In an executory process foreclosure suit, if a creditor cumulates several actions together, if there is a lack of authentic evidence in any part of the presentation, may the Court bifurcate the proceedings, i.e. allow sale of some properties but not others.
Cumulation of actions, or the join-der of separate actions in the same judicial demand, is permitted. La. C.C.P. art. 461, et seq. The only requirements are: (1) each of the actions cumulated must be within the jurisdiction of the court and be brought in the proper venue, and (2) all of the actions cumulated must be mutually consistent and employ the same form of procedure. La.C.C.P. art. 462. As exec-utory proceedings the actions herein were properly cumulated. Once it was decided, however, that one of the actions was not an executory proceeding, but an ordinary proceeding, then that action, because it no longer employed the same form of procedure, could not be cumulated. Under this circumstance, La.C.C.P. art. 464 authorizes the trial court to order separate trials, and that is what the trial judge did, properly, in this case.
The third and fourth issues question the sufficiency of the award of attorney’s fees, and the failure to award damages for mental anguish.
We find no abuse of discretion in the amount of the award of attorney’s fees, or in the denial of damages for mental anguish, as the trial judge fully explained these rulings in his opinion quoted above.
The judgment of the trial court is affirmed, costs of this appeal to be paid by appellants.
AFFIRMED.